IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIPP FLORES ARCHITECTS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:14-cv-02702 |
| | § | |
| MID-CONTINENT CASUALTY COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS

This matter was referred by United States District Judge Vanessa D. Gilmore, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry No. 9). In this breach of contract action, Plaintiff Kipp Flores Architects, LLC ("KFA") seeks to recover, as a judgment creditor, from Defendant Mid-Continent Casualty Company ("Mid-Continent"). (Plaintiff's Complaint ["Complaint"], Docket Entry No. 1). Before the court is Defendant's motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Defendant's Rule 12(b) Motion to Dismiss ["Motion"], Docket Entry No. 6). Plaintiff filed a response in opposition to the motion, to which Defendant has replied. (Plaintiff's Response to Defendant's Rule 12(b) Motion to Dismiss ["Response"], Docket Entry No. 10; Defendant's Reply in Support of Rule 12(b) Motion to Dismiss ["Reply"], Docket Entry No. 11). After considering the pleadings, the evidence submitted, and the applicable law, it is RECOMMENDED that Defendant's motion be GRANTED.

**I. Background**

Plaintiff KFA is an architectural firm that creates and markets home designs. (Compl. 2 ¶ 5). Beginning in 2003, KFA entered into a series of licensing agreements with a Texas homebuilder, Hallmark Collection of Homes, LLC ("Hallmark Collection").[1] (*Id.* at 5 ¶ 18). Pursuant to those agreements, KFA created and delivered architectural designs for Hallmark Collection's use in the construction of its model homes. (*Id.* at 5 ¶ 20). Each design included a license, which allowed Hallmark Collection to build one house only from that architectural plan. (*Id.*). For that reason, the agreements obligated Hallmark Collection to compensate KFA each time it constructed any additional house that was based on a KFA design. (*Id.* at 5-6 ¶ 21). KFA alleges, however, that Hallmark Collection continued to use its designs to build and sell hundreds of houses, without paying it for the right to do so. (*Id.* at 5 ¶ 20).

In March 2009, KFA filed a copyright infringement lawsuit (the "KFA Lawsuit" or the "Underlying Action"), in the Southern District of Texas, against Hallmark Collection, its limited partnership, Hallmark Design Homes, L.P. ("Hallmark Design"), and an individual owner of Hallmark Collection, Joe Partain.[2] *Kipp Flores Architects, LLC v. Hallmark Design Homes, L.P.,* No. 4:09-cv-00850. Eight months into that lawsuit, on November 16, 2009, Hallmark Collection filed for Chapter 7 bankruptcy protection. *In re Hallmark Collection of Homes, LLC*, No. 4:09-bk-38715. On November 23, 2009, the district court entered an order staying and administratively closing the Underlying Action against Hallmark Collection, pending resolution

---

[1] Hallmark Collection was formerly known as Hallmark Design of Homes, LLC. (Compl. 2 ¶ 6). Pursuant to Articles of Amendment filed with the Texas Secretary of State on July 28, 2004, the corporation changed its name to Hallmark Collection of Homes, LLC. (*Id.*; Resp. Ex. 1.A). For the sake of clarity, references will be to the corporation, as "Hallmark Collection."

[2] KFA's complaint alleged, among other things, that the defendants "created, published[,] and used non-pictorial depictions of structures based on KFA's Copyrighted Works in promotional and advertising material . . . [and] published and used these infringing materials in the course of advertising their infringing structures." (Resp. Ex. 1.B at 10 ¶ 15).

of the bankruptcy proceeding. Order Staying and Partially Administratively Closing Case, *Kipp Flores*, No. 4:09-cv-00850, Docket Entry No. 26. The KFA Lawsuit continued, however, against the remaining individual defendant, Joe Partain. (Compl. 7 ¶ 26).

Mid-Continent, Defendant here, had issued a series of commercial general liability policies to the defendants in the KFA Lawsuit. (Compl. 3-4 ¶ 11; *see* Mot. Ex. 7-12). Those policies covered a period from May 2003 to January 2009: 04-GL-000522268 (effective 05/28/03 to 05/28/04); 04-GL-000548825 (effective 05/28/04 to 05/28/05); 04-GL-000590609 (effective 05/28/05 to 05/28/06); 04-GL-000632756 (effective 05/28/06 to 05/28/07); 04-GL-000675359 (effective 05/28/07 to 05/28/08); and 04-GL-000717323 (effective 05/28/08 to 05/28/09) (collectively, the "Mid-Continent Policies"). (*Id.*). The first policy listed Hallmark Collection as the sole named insured.[3] (Compl. 4 ¶ 12; *see* Mot. Ex. 7). All five of the subsequent policies identified both Hallmark Collection and Hallmark Design as named insureds.[4] (Compl. 4 ¶¶ 13-14; *see* Mot. Ex. 8-12). Each of the policies contained similar language and provided coverage for "personal and advertising injury," including any injury that arises out of "infringing upon another's copyright, trade dress or slogan in your 'advertisement.'"

The Mid-Continent Policies also imposed explicit notice of suit requirements on the insureds. Each of the policies provided, in relevant part: "If a claim is made or 'suit' is brought against any insured, you must . . . see to it that we receive written notice . . . as soon as practicable. . . . You and any other involved insured must . . . [i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or

---

3 The first policy was issued to Hallmark Collection under its former name. (Compl. 4 ¶ 12; *see* Mot. Ex. 7).

4 The second policy included a "General Change Endorsement," effective October 22, 2004. (Compl. 4 ¶ 13; Mot. Ex. 8 at 48). The "General Change Endorsement" designated Hallmark Design as the "Named Insured" and Hallmark Collection as the "Extended Named Insured." However, a supplemental declaration identifies both entities as a "Named Insured." (*See* Mot. Ex. 8 at 48, 50).

'suit.'" (Mot. Ex. 7 at 20). The term "you" is defined as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." (*Id.* at 10).

It is undisputed that Mid-Continent did not receive any notice of the KFA Lawsuit until six weeks after Hallmark Collection had filed for bankruptcy protection. (Compl. 7 ¶ 27; Mot. 3 ¶ 3, Ex. 1). That initial notice, by letter dated December 31, 2009, came from the law firm of Adair & Myers, which was acting on behalf of Joe Partain. In the notification letter, the firm informed Mid-Continent of the KFA Lawsuit, provided a copy of the complaint, and requested a defense for Partain in the pending litigation. (*Id.*). The letter stated, in relevant part:

> We have recently been retained by Joe Partain, a defendant in the [KFA Lawsuit]. The purpose of this letter is to notify you of an 'occurrence' under Section IV, Paragraph 2 (a-c) of [Policy Nos. 04-GL-000717323 and 04-GL-000675359] and any other policies that may have been in effect during the period of the "occurrence[]". . . . We request that you authorize defense of this suit using the insured's selected undersigned counsel.

(Mot. Ex. 1). Although the underlying complaint identified all three defendants in the KFA Lawsuit, the law firm's letter did not mention Hallmark Collection, or make any reference to that entity's bankruptcy proceeding. (Compl. 7 ¶ 27; *see* Mot. Ex. 1).

On January 25, 2010, Mid-Continent responded to the notice with a "reservation of rights" letter. (Compl. 8 ¶ 28; Mot. 3 ¶ 4, Ex. 3). Mid-Continent addressed the letter to "Mr. Joe B. Partain," and it identified Hallmark Design as the "Insured" in the heading. (Mot. Ex. 3 at 1). In that letter, Mid-Continent "acknowledge[d] receipt of your tender for coverage along with the original complaint filed in the [KFA Lawsuit]." (*Id.*). The insurer represented that it had "conducted a thorough review of th[e] lawsuit," and it had identified five policies "that may be applicable to this litigation." (*Id.* at 1-2). The letter explained that the "Who Is An Insured"

4

section of the applicable policies "w[ould] apply as to [its] defense obligations as to the named defendants in this litigation." (*Id.* at 4-5). Mid-Continent concluded the letter by stating that "the above analysis constitutes our best effort to inform Hallmark Design [] of all factors of which we are currently aware that may affect our ultimate responsibility to provide coverage to Hallmark Design [] for the damages sought by the plaintiff in this lawsuit." (*Id.* at 6).

On April 6, 2010, KFA filed a $63,471,000 proof of claim, based on "copyright infringement," in the Hallmark Collection bankruptcy action. (Compl. 9 ¶ 31; Resp. Ex. 1.B at 1, Ex. 1.C at 7). In support of this claim, Plaintiff attached a copy of the complaint from the Underlying Action, as well as a three-page document entitled "Explanation and Synopsis of Kipp Flores Architect's Proof of Claim." (Resp. Ex. 1.B at 2-13). In that document, Plaintiff provided a calculation of the total claim amount "[b]ased on the deposition testimony of Mr. Partain in the [KFA] Lawsuit." (*Id.* at 2-4). No objections were filed to KFA's proof of claim. (Compl. 12 ¶ 39; *see* Resp. Ex. 1.D). A few months later, on August 17, 2010, the Chapter 7 Trustee in the Hallmark Collection bankruptcy filed a "no asset report," stating that there were no proceeds from the estate for distribution to creditors. (Resp. Ex. 1.D at 4). Following this, the Hallmark Collection bankruptcy case was closed, on September 21, 2010. (Resp. Ex. 1.E).

In the interim, on June 17, 2010, Adair & Myers sent Mid-Continent a second notice letter, on behalf of two newly-added defendants to the KFA Lawsuit.[5] (Compl. 10 ¶ 35; Mot. 3 ¶ 3, Ex. 2). Attached to that notice letter was a copy of the amended complaint from the KFA

---

5 Nearly identical to the first notification letter, the June 17, 2010 letter stated the following:

We have recently been retained by Laura Partain and Bill Graper, newly-added defendants in the [KFA Lawsuit]. The purpose of this letter is to notify you of an 'occurrence' under Section IV, Paragraph 2 (a-c) of [Policy Nos. 04-GL-00548825, 04-GL-000590609, 04-GL-000632756, 04-GL-000717323, and 04-GL-000675359] and any other policies that may have been in effect during the period of the "occurrence[]". . . . We request that you authorize defense of this suit using the insureds' selected undersigned counsel.

5

Lawsuit. (Compl. 10 ¶ 35; *see* Mot. Ex. 2). While the amended complaint identified Hallmark Collection as a defendant in the KFA Lawsuit, and referenced the bankruptcy filing,[6] the second notice letter did not mention Hallmark Collection, at all. (Compl. 10 ¶ 35; *see* Mot. Ex. 2).

The insurer responded to the second notice letter with another reservation of rights letter, dated July 7, 2010.[7] (Compl. 11 ¶ 36; Resp. Ex. 4). Mid-Continent sent that letter to three of the defendants in the Underlying Action, Joe Partain, Laura Partain, and Bill Graper. (Resp. Ex. 4 at 1). Once again, in the heading, Hallmark Design was identified as the "Insured." (*Id.*). The second reservation of rights letter contained identical language to that of the first letter from the insurer.[8] (*See* Mot. Ex. 3; Resp. Ex. 4). Neither the January 25, 2010 reservation of rights letter, nor the July 7, 2010 reservation of rights letter mentioned Hallmark Collection. (*Id.*).

On February 10, 2014, KFA sent Mid-Continent a presentment letter, reporting that it had obtained a $63,471,000 "final judgment" against Hallmark Collection in the bankruptcy court. (Compl. 13 ¶ 43; Resp. Ex. 1). Plaintiff insisted that, as Hallmark Collection's insurer, "Mid-Continent [wa]s obligated to pay this final judgment," under the terms of the insurance policies. (Resp. Ex. 1 at 2). In the concluding paragraph of that letter, KFA demanded payment of $6,000,000 within thirty days. (*Id.*). Defendant reportedly denied Plaintiff's request on March 12, 2014. (Compl. 13 ¶ 43).

---

6 The amended complaint provided, in relevant part: "Hallmark Collection has filed a petition under 11 U.S.C. Chapter 7, Case No. 09-38715 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. Pursuant to 11 U.S.C. § 362, all of plaintiff's claims in this case against Hallmark Collection are stayed." First Amended Complaint at 4 ¶ 3, *Kipp Flores Architects, LLC v. Hallmark Design Homes, L.P.,* No. 4:09-cv-00850, Docket Entry No. 41.

7 In its motion, Defendant insists that it responded to the June 17 Letter in a different letter, dated July 23, 2010. (Mot. 3 ¶ 4, Ex. 3). In a previous lawsuit, however, Mid-Continent identified the July 7 Letter as its second reservation of rights letter. (*See* Resp. Ex. 4). The court resolves this factual dispute in favor of KFA. *See Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005).

8 However, in the second reservation of rights letter, Mid-Continent stated that its defense obligations would apply to the "named insureds," as opposed to the "named defendants." (*See* Mot. Ex. 3 at 5; Resp. Ex. 4 at 5).

On September 19, 2014, KFA filed this breach of contract action against Mid-Continent, claiming to be a "judgment creditor of Hallmark Collection and [a] third[-]party beneficiary under the Mid-Continent [P]olicies."[9] (Compl. 13-14 ¶¶ 45-51). According to Plaintiff, "KFA's Proof of Claim, which is now a final judgment, established that Hallmark Collection infringed KFA's copyrights during the term of each of the foregoing insurance policy contracts." (Compl. 12 ¶ 42). Plaintiff contends that "Mid-Continent has denied its obligations and has failed and refused to provide KFA with indemnification under the Mid-Continent policies." (*Id.* at 13 ¶ 44). KFA argues further that "[a]s a judgment creditor of Hallmark Collection, KFA has all of the rights against Mid-Continent that Hallmark Collection has under the Mid-Continent policies." (*Id.* at 12 ¶ 41).

Defendant now moves to dismiss the Complaint, under Rules 12(b)(1) and 12(b)(6), arguing that Plaintiff lacks standing to bring this action, and, alternatively, that KFA has failed to state a claim on which relief can be granted. (Mot. 1-2 ¶ 1).

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of an action if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

---

9 In its complaint, KFA refers to itself as both a "judgment creditor" and a "third- party beneficiary." (Compl. 14 ¶ 50). Under Texas law, "an entity becomes a third-party beneficiary to an insurance contract when it obtains a judgment against the insured; at that time, the entity becomes a third-party judgment creditor." *Debes v. Gen. Star Indem. Co.*, No. 09-12-00527-CV, 2014 WL 3384679, at *9 (Tex. App.—Beaumont 2014, no writ) (quoting *P.G. Bell Co. v. U.S. Fid. & Guar. Co.*, 853 S.W.2d 187, 189 (Tex. App.—Corpus Christi 1993, no writ)); *see Standard Fire Ins. Co. v. Sassin*, 894 F. Supp. 1023, 1027 (N.D. Tex. 1995) (noting that a judgment creditor of an insured is considered to be a third-party beneficiary of the insured's policy). For the sake of clarity, all references will be made to KFA as an alleged "judgment creditor."

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014) (quoting *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011)). In reviewing a Rule 12(b)(1) motion, the court may rely on any of the following to decide the matter: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565-66 (5th Cir. 2010).

"Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: 'facial' attacks and 'factual' attacks." *A.W. v. Humble Ind. Sch. Dist.*, 25 F. Supp. 3d 973, 981 (S.D. Tex. 2014) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). If, as in the present case, a defendant raises a "factual attack" on the court's subject matter jurisdiction, the court may consider any evidence submitted by the parties that is relevant to the issue of jurisdiction. *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 578 (S.D. Tex. 2014) (citing *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989)); *see Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony, or other admissible evidence. *Id.* The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id.* "The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c)." *Turner Indus. Group, LLC v. Int'l Union of Operating Eng'rs*, 8 F. Supp. 3d 875, 884 (S.D. Tex. 2014). In resolving a factual attack, the "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Gilkerson*, 1 F. Supp. 3d at 578 (quoting *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981)). Further, "no presumptive truthfulness attaches to the

plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *In re The Complaint of RLB Contracting, Inc.*, --- F.3d ----, 2014 WL 6865875, at *3 n. 7 (5th Cir. 2014) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

In this case, Defendant has made a "factual attack" to the court's subject matter jurisdiction, by submitting evidentiary materials with its Rule 12(b)(1) motion. For that reason, in weighing the motion, the entire record will be considered, and any disputed jurisdictional facts will be resolved, as necessary.

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 948 (5th Cir. 2011) (quoting *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)). In ruling on such a motion, the court cannot look beyond the pleadings. *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994)). "To survive dismissal, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to

raise a right to relief above the speculative level."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Morris v. Livingston*, 739 F.3d 740, 745 (5th Cir. 2014) (quoting *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011)). Further, if a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "the court should dismiss only on the jurisdictional ground under Rule 12(b)(1), without reaching the question of failure to state a claim under Rule 12(b)(6)." *Crenshaw-Logal v. City of Abilene*, 436 F. App'x 306, 308 (5th Cir. 2011) (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). This approach "prevents [a] court[] without jurisdiction 'from prematurely dismissing a case with prejudice.'" *Id.* (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

In this case, Mid-Continent has filed motions to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), so the Rule 12(b)(1) challenge to jurisdiction must be addressed first. *See Morris*, 739 F.3d at 745.

**III. Analysis**

As a preliminary matter, Plaintiff argues that Defendant's motion should be denied, because "Mid-Continent does not make any standing argument that is severable from the merits of KFA's case." (Resp. 5). KFA relies on *Montez v. Department of Navy*, 392 F.3d 147 (5th Cir. 2004), for the proposition that, in such circumstances, the court must "assume jurisdiction and

proceed to the merits." (*Id.* at 4). In other words, Plaintiff contends that Defendant's challenge to the court's jurisdiction must be brought "as a direct attack on the merits of the case under either Rule 12(b)(6) or Rule 56." (*Id.*). However, the United States Supreme Court has explicitly rejected the notion that a court can "assume" jurisdiction in a case for the purpose of deciding the merits, because such an approach "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *see Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 531 n. 1 (5th Cir. 2006) ("[T]he district court should not have decided to bypass the jurisdictional question . . . and proceed directly to the merits."); *Cox v. City of Dallas*, 256 F.3d 281, 303 (5th Cir. 2001) ("Standing is a jurisdictional doctrine that the Supreme Court has held must be decided before the merits of the case."). In addition, the holding in *Montez* appears to be limited to those actions that arise under federal statutes. *See Montez*, 392 F.3d at 150; *Houston Ref., L.P. v. United Steel, Paper, & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 765 F.3d 396, 407 n. 20 (5th Cir. 2014); *Jasper v. Fed. Emergency Mgmt. Agency*, 414 F. App'x 649, 651-52 (5th Cir. 2011) (refusing to assume jurisdiction, because the plaintiff did not allege any federal causes of action). For those reasons, Rule 12(b)(1) is the appropriate procedural vehicle to utilize to resolve the jurisdictional question in this case.

"[T]he issue of standing is one of subject matter jurisdiction." *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006). Standing addresses "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A plaintiff must have standing under both Article III of the Constitution, and, the applicable state law, to maintain a cause of action in the federal courts. *Mid-Hudson Catskill*

*Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005); s*ee PEMEX Exploration y Produccion v. Murphy Energy Corp.*, 923 F. Supp. 2d 961, 965 (S.D. Tex. 2013) (citing *Crocker v. Fed. Deposit Ins. Corp.*, 826 F.2d 347, 349 (5th Cir. 1987)) ("In deciding questions of law, including standing, involving claims based on state law, applicable state law governs.").

The parties agree that Texas law applies in this lawsuit. (Mot. 10; Resp. 6). Under Texas law, the controlling factor in determining whether a third party can enforce an insurance policy is the intention of the contracting parties. *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011); *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 388 (Tex. App.—Dallas 2012, no pet.) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). The court must ascertain the contracting parties' intent from the language of the policy. *See Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) ("First, we look at the language of the [insurance] policy because we presume parties intend what the words of their contract say."); *Cunningham v. Healthco, Inc.*, 824 F.2d 1448, 1457-58 (5th Cir. 1987) ("[I]n Texas the law is clear that one claiming to be a third-party beneficiary succeeds or fails according to the provisions of the contract sued upon.").

In Texas, insurance policies are construed according to the ordinary rules of contract interpretation. *See, e.g., State Farm Lloyd's v. Page*, 315 S.W.3d 525, 527 (Tex. 2010); *Mid-Continent Cas. Co. v. Castagna*, 410 S.W.3d 445, 456 (Tex. App.—Dallas 2013, pet. denied). The court must "examine the entire [policy] and seek to harmonize and give effect to all provisions so that none will be meaningless." *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010); *see also State Farm Life Ins. Co. v. Beaston*,

907 S.W.2d 430, 433 (Tex. 1995) ("[C]ourts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract."). Further, an insurance policy should be interpreted "from a utilitarian standpoint, bearing in mind the particular business activity sought to be served." *Certain Underwriters at Lloyd's of London v. Cardtronics, Inc.*, 438 S.W.3d 770 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (quoting *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005)). "The terms in an insurance contract are given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense." *SingleEntry.com, Inc. v. St. Paul Fire & Marine Ins. Co.*, 117 F. App'x 933, 936 (5th Cir. 2004) (citing *New Era of Networks, Inc. v. Great N. Ins. Co.*, No. Civ. A. H-01-1841, 2003 WL 23573645, at *8 (S.D. Tex. Jun. 1, 2001)).

In this case, Defendant argues that KFA lacks standing to sue under the Mid-Continent Policies because its insured, Hallmark Collection, failed to comply with the policy's notice-of-suit provision. (Mot. 14 ¶ 27). Mid-Continent contends that, under the express language of its policies, "no one has a right to sue for coverage unless all of [the policy] terms have been fully complied with." (*Id.* at 10 ¶ 21). Defendant insists that Hallmark Collection failed to provide it with any notice of the KFA Lawsuit or request a defense in that proceeding, and, therefore, it never triggered the insurer's duty to defend it in that action. (*Id.* at 12 ¶¶ 24-25).

In response, KFA argues that Hallmark Collection did, in fact, comply with the notice provision, because "Mid-Continent expected notice from any named insured to be notice for all named insureds." (Resp. 10). Plaintiff argues, as well, that the insurer accepted and assumed a duty to defend all named insureds, including Hallmark Collection, in its two reservation of rights letters. (*Id.* at 12-13).

To recover under an insurance policy as a third-party judgment creditor, a plaintiff must show that the insured complied with all conditions and terms of the policy. *State Farm Lloyd's Ins. Co. v. Maldonado*, 963 S.W.2d 38, 40 (Tex. 1998); *see SingleEntry.com, Inc. v. St. Paul Fire & Marine Ins. Co.*, 117 F. App'x 933, 935 (5th Cir. 2004) ("A third-party beneficiary judgment creditor of the insured steps into the shoes of the insured."). With regard to notice, the Texas Supreme Court has consistently held that "an insurer has no duty to defend and no liability under a policy unless and until the insured in question complies with th[at] [policy's] notice-of-suit conditions." *Jenkins v. State & Cnty. Mut. Fire Ins. Co.*, 287 S.W.3d 891, 897 (Tex. App.—Fort Worth 2009, pet. denied); *see, e.g., Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 610 (Tex. 2008)); *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 174-75 (Tex. 1995; *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 370 (Tex. 1978). Further, as explained by the court in *Crocker*,

Mere awareness of a claim or suit does not impose a duty on the insurer to defend under the policy; there is no unilateral duty to act unless and until the . . . insured first requests a defense— a threshold duty that the insured fulfills under the policy by notifying the insurer that the insured has been served with process and the insurer is expected to answer on its behalf.

*Crocker*, 246 S.W.3d at 608; *see Hudson v. City of Houston*, 392 S.W.3d 714, 726 (Tex. App.— Houston [1st Dist.] 2011, pet. denied) (explaining that the rule set forth in *Crocker* "applies regardless of whether the insurer knows that the insured has been sued and served, regardless of whether the insurer actually defends another insured in the same litigation, and regardless of whether the insurer was aware of an interlocutory default judgment against the insured.").

The Mid-Continent Policies at issue set out explicit requirements with which an insured must comply to secure coverage. Under the section entitled, "Duties In The Event Of Occurrence, Offense, Claim, or Suit," the policy states: "If a claim is made or 'suit' is brought against any insured . . . [y]ou and any other involved insured must . . . [i]mmediately send us

copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit[.]'" (Mot. Ex. 7 at 20). Based on a plain reading of that policy provision, each "involved insured" must promptly send Mid-Continent copies of the legal papers filed in a suit. In this case, Plaintiff has not alleged, nor does the record show, that Hallmark Collection ever complied with that requirement. Because Hallmark Collection failed to comply with the policy notice-of-suit provision, Mid-Continent's duty to defend was never triggered. For that reason, under *Crocker*, the insurer has no liability to KFA, as a matter of law. *See Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 609-10 (Tex. 2008) ("Absent a threshold duty to defend, there can be no liability to [an insured], or to [an insured's judgment creditor] derivatively."); *Jenkins v. State & Cnty. Mut. Fire Ins. Co.*, 287 S.W.3d 891, 896-97 (Tex. App.—Fort Worth 2009, pet. denied) ("If there is no duty to defend, there is no duty to indemnify.").

KFA insists, however, that Hallmark Collection's failure to provide notice is not a bar to coverage, because the notice-of-suit provision in this case should be construed as a covenant, rather than a condition precedent. (Resp. 13). According to KFA, under the terms of the policy, "late notice, or no notice at all, is not a bar to coverage unless Mid-Continent was prejudiced" by that failure. (*Id.* at 15). Plaintiff argues, for that reason, that Mid-Continent "can only invoke lack of notice as a[n] [affirmative] defense by proving prejudice." (*Id.* at 15).

In Texas, an insured's failure to comply with a notice provision in an insurance policy does not absolve an insurer from liability, unless such lack of notice prejudices the insurer. *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636-37 (Tex. 2008). This rule applies regardless of whether the notice provision is expressed as a covenant or a condition precedent to coverage. *Id.*; *see Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 378 (Tex. 2009) (""[W]hile the Prodigy policy describes the notice provision as a 'condition

15

precedent,' we must go further to determine whether prejudice is, or is not, required."). The determination of prejudice is typically a question of fact for the jury to decide. *See Coastal Ref. & Mktg. v. United States Fid. & Guar. Co.*, 218 S.W.3d 279, 287 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *P.G. Bell Co. v. United States Fid. & Guar. Co.*, 853 S.W.2d 187, 191 (Tex. App.—Corpus Christi 1993, no writ). Under certain circumstances, however, prejudice can be established as a matter of law. *See, e.g., Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 166 (Tex. 1993) ("[A]n insurer that is not notified of suit against its insured until a default judgment has become final . . . is prejudiced as a matter of law."); *Md. Cas. Co. v. Am. Home Assurance Co.*, 277 S.W.3d 107, 119 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd) ("[W]holly lacking notice, as opposed to merely late notice, supports a finding of prejudice as a matter of law."); *Progressive Cnty. Mut. Ins. Co. v. Trevino*, 202 S.W.3d 811, 818 (Tex. App.—San Antonio 2006, pet. denied) (finding prejudice as a matter of law, because insured refused to cooperate with insurer).

In determining whether an insurer has been prejudiced, as a matter of law, "the crucial inquiry is whether the insurer's ability to defend against the claim has been irreparably impaired by an insured's failure to comply with a notice-of-suit provision." *Hudson v. City of Houston*, 392 S.W.3d 714, 728 (Tex. App.—Houston [1st Dist. 2011, pet. denied). In this case, Hallmark Collection's notice was not merely late, but altogether absent. It is undisputed that Hallmark Collection never requested a defense from Mid-Continent, or otherwise ever contacted the insurer, in regard to the Underlying Action. By failing to comply with the notice provision and requesting a defense, Hallmark Collection deprived Mid-Continent of its ability to answer and to defend against KFA's claims in the Underlying Action; to conduct discovery; and to fully litigate the merits of KFA's bankruptcy proof of claim. *See Hudson*, 392 S.W.3d at 729; *Md. Cas. Co.*,

277 S.W.3d at 119 ("[T]he notice—provided only after the claims had been settled—was so late that it wholly deprived Maryland of its ability to defend the lawsuit."). Indeed, Hallmark's inaction resulted in the rendition of $63,471,000 judgment against its no-asset bankruptcy estate. Plaintiff, however, argues that Mid-Continent did not suffer prejudice, because the insurer knew that Hallmark Collection had been sued in the Underlying Action. (Resp. 11; *see* Mot. Ex. 1-4). But an insurer's actual knowledge of a claim or suit does not preclude a showing of prejudice. *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 609 (Tex. 2008); *Jenkins v. State & Cnty. Mut. Fire Ins. Co.*, 287 S.W.3d 891, 898 (Tex. App.—Fort Worth 2009, pet. denied). On this record, Hallmark Collection's complete failure to comply with the notice-of-suit provision can be said to have prejudiced Mid-Continent, as a matter of law. *See Hudson*, 392 S.W.3d at 729; *Jenkins*, 287 S.W.3d at 899; *Md. Cas. Co.*, 277 S.W.3d at 119; *see also Crocker*, 246 S.W.3d at 609 (noting that insurer "was obviously prejudiced" by insured's complete lack of notice).

KFA also argues that full compliance with the notice-of-suit provision is not required, because Mid-Continent accepted and assumed a duty to defend all named insureds, including Hallmark Collection, in each of its reservation of rights letters.[10] (Resp. 12-13). Defendant, for its part, concedes that it "offered to defend" Hallmark Design, Joe Partain, Laura Partain, and William Graper under a reservation of rights. However, the insurer is adamant that it never "acknowledged a duty to defend Hallmark Collection." (Reply 11).

In this case, even if Mid-Continent did offer to defend Hallmark Collection subject to a reservation of rights, the insurer did not thereby waive its right to insist on full compliance with

---

10 Mid-Continent insists that, under *Lancer Insurance Co. v. Garcia Holiday Tours*, 345 S.W.3d 50 (Tex. 2011), "KFA has no standing to assert any purported duty of Mid-Continent to Hallmark Collection." (Reply 11). However, *Lancer* stands only for the proposition that a judgment creditor lacks standing to *bring a claim* for breach of the duty to defend against an insurer. *See Lancer*, 345 S.W.3d at 59. Because KFA is not making a claim for breach of the duty to defend, that case has no relevance.

all of the policy terms. *See In re Madrid*, 242 S.W.3d 563, 568 (Tex. App.—El Paso 2007, orig. proceeding) ("By accepting the defense under a reservation of rights, the insured impliedly agrees that the insurer does not waive coverage defenses."); *Providence Wash. Ins. Co. v. A & A Coating, Inc.*, 30 S.W.3d 554, 556 (Tex. App.—Texarkana 2000, pet. denied) ("When a defense is undertaken through a valid reservation of rights, the insurer may withdraw its defense when it becomes clear there is no coverage under the policy."); *Ross v. Marshall*, 456 F.3d 442, 443 (5th Cir. 2007) ("An insurer who defends its insured under a full reservation of rights provides a defense in the liability action, but reserves the right to contest coverage later."); *see also Tex. Ass'n of Counties Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.*, 52 S.W.3d 128, 131 (Tex. 2000) ("[A] unilateral reservation-of-rights letter cannot create rights not contained in the insurance policy."). In its reservation of rights letters, Mid-Continent reserved its right to deny coverage, based on the insured's failure to comply with "any policy condition, limitation or term." (Mot. Ex. 3 at 6; Resp. Ex. 4 at 6). Under Texas law, Mid-Continent is not barred from now arguing that it had no duty to defend Hallmark Collection.[11]

Because Hallmark Collection never complied with the policy's notice-of-suit provision, KFA cannot recover as a judgment creditor under the Mid-Continent Policies, as a matter of law. *See Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 609 (Tex. 2008); *State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 40 (Tex. 1998). For that reason, the court should dismiss Plaintiff's claim for breach of contract due to lack of standing, under Rule 12(b)(1). And,

---

11 In support of its contention that the insurer assumed a duty to defend, Plaintiff also alleges that, during the KFA Lawsuit, Mid-Continent engaged in settlement negotiations on behalf of Hallmark Collection. (Resp. 12). However, an insurer's participation in settlement negotiations, without more, does not constitute the assumption of the insured's defense. *See Underwriters at Lloyd's v. Gilbert Tex. Const., L.P.*, 245 S.W.3d 29, 36 (Tex. App.—Dallas 2007, no pet. h.); *Am. Eagle Ins. Co. v. Nettleton*, 932 S.W.2d 169, 174 (Tex. App.—El Paso 1996, writ denied).

because the court has no subject matter jurisdiction, there is no need to address Defendant's other arguments for dismissal. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

**IV. Conclusion**

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss, under Rule 12(b)(1), be **GRANTED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 9th day of January, 2015.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**