IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIPP FLORES ARCHITECTS, LLC, | § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 4:14-cv-02702 |
| MID-CONTINENT CASUALTY COMPANY, | § § § | |
| Defendant. | § § | |

### AMENDED MEMORANDUM AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS

This matter was referred by United States District Judge Vanessa D. Gilmore, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry No. 9). In this breach of contract action, Plaintiff Kipp Flores Architects, LLC ("KFA") seeks to recover, as a judgment creditor, from Defendant Mid-Continent Casualty Company ("Mid-Continent"). (Plaintiff's Complaint ["Complaint"], Docket Entry No. 1). Defendant has filed a consolidated motion to dismiss the suit, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Defendant's Rule 12(b) Motion to Dismiss ["Motion"], Docket Entry No. 6). Plaintiff filed a response in opposition to the motion, to which Defendant has replied. (Plaintiff's Response to Defendant's Rule 12(b) Motion to Dismiss ["Response"], Docket Entry No. 10; Defendant's Reply in Support of Rule 12(b) Motion to Dismiss ["Reply"], Docket Entry No. 11).

An earlier memorandum on Defendant's motion was issued on January 9, 2015, in which it was recommended that the motion to dismiss under Rule 12(b)(1) be granted. (Memorandum and Recommendation on Defendant's Motion to Dismiss, Docket Entry No. 14). Plaintiff filed objections to that recommendation on January 23, 2015. (Kipp Flores Architects, LLC's

Objections to Memorandum and Recommendations of Magistrate Judge and Request for Hearing ["Objections"], Docket Entry No. 15). Defendant responded to the objections, and Plaintiff replied. (Mid-Continent Casualty Company's Response to Objections to Magistrate's Report and Recommendation Regarding Rule 12(b)(1) Motion to Dismiss ["Response to Objections"], Docket Entry No. 17; Plaintiff's Reply in Support of Plaintiff's Objections to Magistrate's Report and Recommendation Regarding Rule 12(b)(1) Motion to Dismiss ["Reply to Objections"], Docket Entry No. 18). In deference to Plaintiff's objections, and in an abundance of caution, the court has decided that the jurisdictional question in this case should be more appropriately resolved under the procedural safeguards provided by Rule 56 of the Federal Rules of Civil Procedure. The court agrees with KFA that it need not prove the merits of its case to plead standing to proceed. For that reason, the court amends its original recommendation.

After considering the objections of the parties, the pleadings, the evidence submitted, and the applicable law, it is RECOMMENDED that Defendant's 12(b)(1) motion be DENIED.

## I. Background

Plaintiff KFA is an architectural firm that creates and markets home designs. (Compl. 2 ¶ 5). Beginning in 2003, KFA entered into a series of licensing agreements with a Texas homebuilder, Hallmark Collection of Homes, LLC ("Hallmark Collection").[1] (*Id.* at 5 ¶ 18). Pursuant to those agreements, KFA created and delivered architectural designs for Hallmark Collection's use in the construction of its model homes. (*Id.* at 5 ¶ 20). Each design included a license, which allowed Hallmark Collection to build one house only from that architectural plan.

---

1. Hallmark Collection was formerly known as Hallmark Design of Homes, LLC. (Compl. 2 ¶ 6). Pursuant to Articles of Amendment filed with the Texas Secretary of State on July 28, 2004, the corporation changed its name to Hallmark Collection of Homes, LLC. (*Id.*; Resp. Ex. 1.A). For the sake of clarity, references will be to the corporation, as "Hallmark Collection."

(*Id.*). For that reason, the agreements obligated Hallmark Collection to compensate KFA each time it constructed any additional house that was based on a KFA design. (*Id.* at 5-6 ¶ 21). KFA alleges, however, that Hallmark Collection continued to use its designs to build and sell hundreds of houses, without paying it for the right to do so. (*Id.* at 5 ¶ 20).

In March 2009, KFA filed a copyright infringement lawsuit (the "KFA Lawsuit" or the "Underlying Action"), in the Southern District of Texas, against Hallmark Collection, its limited partnership, Hallmark Design Homes, L.P. ("Hallmark Design"), and an individual owner of Hallmark Collection, Joe Partain.[2] *Kipp Flores Architects, LLC v. Hallmark Design Homes, L.P.*, No. 4:09-cv-00850. Eight months into that lawsuit, on November 16, 2009, Hallmark Collection filed for Chapter 7 bankruptcy protection. *In re Hallmark Collection of Homes, LLC*, No. 4:09-bk-38715. On November 23, 2009, the district court entered an order staying and administratively closing the Underlying Action against Hallmark Collection, pending resolution of the bankruptcy proceeding. Order Staying and Partially Administratively Closing Case, *Kipp Flores*, No. 4:09-cv-00850, Docket Entry No. 26. The KFA Lawsuit continued, however, against the remaining individual defendant, Joe Partain. (Compl. 7 ¶ 26).

Mid-Continent, Defendant here, had issued a series of commercial general liability policies to the defendants in the KFA Lawsuit. (Compl. 3-4 ¶ 11; *see* Mot. Ex. 7-12). Those policies covered a period from May 2003 to January 2009: 04-GL-000522268 (effective 05/28/03 to 05/28/04); 04-GL-000548825 (effective 05/28/04 to 05/28/05); 04-GL-000590609 (effective 05/28/05 to 05/28/06); 04-GL-000632756 (effective 05/28/06 to 05/28/07); 04-GL-000675359 (effective 05/28/07 to 05/28/08); and 04-GL-000717323 (effective 05/28/08 to

---

2. KFA's complaint alleged, among other things, that the defendants "created, published[,] and used non-pictorial depictions of structures based on KFA's Copyrighted Works in promotional and advertising material . . . [and] published and used these infringing materials in the course of advertising their infringing structures." (Resp. Ex. 1.B at 10 ¶ 15).

3

05/28/09) (collectively, the "Mid-Continent Policies"). (*Id.*). The first policy listed Hallmark Collection as the sole named insured.[3] (Compl. 4 ¶ 12; *see* Mot. Ex. 7). All five of the subsequent policies identified both Hallmark Collection and Hallmark Design as named insureds.[4] (Compl. 4 ¶¶ 13-14; *see* Mot. Ex. 8-12). Each of the policies contained similar language and provided coverage for "personal and advertising injury," including any injury that arises out of "infringing upon another's copyright, trade dress or slogan in your 'advertisement.'"

**The Mid-Continent Policies also imposed explicit notice of suit and cooperation requirements on the insureds.** Each of the policies provided, in relevant part: "If a claim is made or 'suit' is brought against any insured, you must . . . see to it that we receive written notice . . . as soon as practicable. . . . You and any other involved insured must . . . [i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'" (Mot. Ex. 7 at 20). The term "you" is defined as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." (*Id.* at 10).

It is undisputed that Mid-Continent did not receive any notice of the KFA Lawsuit until six weeks after Hallmark Collection had filed for bankruptcy protection. (Compl. 7 ¶ 27; Mot. 3 ¶ 3, Ex. 1). That initial notice, by letter dated December 31, 2009, came from the law firm of Adair & Myers, which was acting on behalf of Joe Partain. **In the notification letter, the firm informed Mid-Continent of the KFA Lawsuit, provided a copy of the complaint, and**

---

3. The first policy was issued to Hallmark Collection under its former name. (Compl. 4 ¶ 12; *see* Mot. Ex. 7).

4. The second policy included a "General Change Endorsement," effective October 22, 2004. (Compl. 4 ¶ 13; Mot. Ex. 8 at 48). The "General Change Endorsement" designated Hallmark Design as the "Named Insured" and Hallmark Collection as the "Extended Named Insured." However, a supplemental declaration identifies both entities as a "Named Insured." (*See* Mot. Ex. 8 at 48, 50).

4

**requested a defense for "the insured" in the pending litigation.** (*Id.*). The letter stated, in relevant part:

> We have recently been retained by Joe Partain, a defendant in the [KFA Lawsuit]. The purpose of this letter is to notify you of an 'occurrence' under Section IV, Paragraph 2 (a-c) of [Policy Nos. 04-GL-000717323 and 04-GL-000675359] and any other policies that may have been in effect during the period of the "occurrence[]". . . . We request that you authorize defense of this suit using the insured's selected undersigned counsel.

(Mot. Ex. 1).

Although the underlying complaint identified all three defendants in the KFA Lawsuit, the law firm's letter did not mention Hallmark Collection, or make any reference to that entity's bankruptcy proceeding. (Compl. 7 ¶ 27; *see* Mot. Ex. 1).

On January 25, 2010, Mid-Continent responded to the notice with a "reservation of rights" letter. (Compl. 8 ¶ 28; Mot. 3 ¶ 4, Ex. 3). Mid-Continent addressed the letter to "Mr. Joe B. Partain," and it identified Hallmark Design as the "Insured" in the heading. (Mot. Ex. 3 at 1). In that letter, Mid-Continent "acknowledge[d] receipt of your tender for coverage along with the original complaint filed in the [KFA Lawsuit]." (*Id.*). The insurer represented that it had "conducted a thorough review of th[e] lawsuit," and it had identified five policies "that may be applicable to this litigation." (*Id.* at 1-2). The letter explained that the "Who Is An Insured" section of the applicable policies "w[ould] apply as to [its] defense obligations as to the named defendants in this litigation." (*Id.* at 4-5). Mid-Continent concluded the letter by stating that "the above analysis constitutes our best effort to inform Hallmark Design [] of all factors of which we are currently aware that may affect our ultimate responsibility to provide coverage to Hallmark Design [] for the damages sought by the plaintiff in this lawsuit." (*Id.* at 6).

On April 6, 2010, KFA filed a $63,471,000 proof of claim, based on "copyright infringement," in the Hallmark Collection bankruptcy action. (Compl. 9 ¶ 31; Resp. Ex. 1.B at

5

1, Ex. 1.C at 7). In support of this claim, Plaintiff attached a copy of the complaint from the Underlying Action, as well as a three-page document entitled "Explanation and Synopsis of Kipp Flores Architect's Proof of Claim." (Resp. Ex. 1.B at 2-13). In that document, Plaintiff provided a calculation of the total claim amount "[b]ased on the deposition testimony of Mr. Partain in the [KFA] Lawsuit." (*Id.* at 2-4). No objections were filed to KFA's proof of claim. (Compl. 12 ¶ 39; *see* Resp. Ex. 1.D). A few months later, on August 17, 2010, the Chapter 7 Trustee in the Hallmark Collection bankruptcy filed a "no asset report," stating that there were no proceeds from the estate for distribution to creditors. (Resp. Ex. 1.D at 4). Following this, the Hallmark Collection bankruptcy case was closed, on September 21, 2010. (Resp. Ex. 1.E).

In the interim, on June 17, 2010, Adair & Myers sent Mid-Continent a second notice letter, on behalf of two newly-added defendants to the KFA Lawsuit.[5] (Compl. 10 ¶ 35; Mot. 3 ¶ 3, Ex. 2). Attached to that notice letter was a copy of the amended complaint from the KFA Lawsuit. (Compl. 10 ¶ 35; *see* Mot. Ex. 2). While the amended complaint identified Hallmark Collection as a defendant in the KFA Lawsuit, and referenced the bankruptcy filing,[6] the second notice letter did not mention Hallmark Collection, at all. (Compl. 10 ¶ 35; *see* Mot. Ex. 2).

---

5. Nearly identical to the first notification letter, the June 17, 2010 letter stated the following:

> We have recently been retained by Laura Partain and Bill Graper, newly-added defendants in the [KFA Lawsuit]. The purpose of this letter is to notify you of an 'occurrence' under Section IV, Paragraph 2 (a-c) of [Policy Nos. 04-GL-00548825, 04-GL-000590609, 04-GL-000632756, 04-GL-000717323, and 04-GL-000675359] and any other policies that may have been in effect during the period of the "occurrence[]". . . . We request that you authorize defense of this suit using the insureds' selected undersigned counsel.

6. The amended complaint provided, in relevant part: "Hallmark Collection has filed a petition under 11 U.S.C. Chapter 7, Case No. 09-38715 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. Pursuant to 11 U.S.C. § 362, all of plaintiff's claims in this case against Hallmark Collection are stayed." First Amended Complaint at 4 ¶ 3, *Kipp Flores Architects, LLC v. Hallmark Design Homes, L.P.,* No. 4:09-cv-00850, Docket Entry No. 41.

The insurer responded to the second notice letter with another reservation of rights letter, dated July 7, 2010.[7] (Compl. 11 ¶ 36; Resp. Ex. 4). Mid-Continent sent that letter to three of the defendants in the Underlying Action, Joe Partain, Laura Partain, and Bill Graper. (Resp. Ex. 4 at 1). Once again, in the heading, Hallmark Design was identified as the "Insured." (*Id.*). The second reservation of rights letter contained identical language to that of the first letter from the insurer.[8] (*See* Mot. Ex. 3; Resp. Ex. 4). Neither the January 25, 2010 reservation of rights letter, nor the July 7, 2010 reservation of rights letter mentioned Hallmark Collection. (*Id.*).

On February 10, 2014, KFA sent Mid-Continent a presentment letter, reporting that it had obtained a $63,471,000 "final judgment" against Hallmark Collection in the bankruptcy court. (Compl. 13 ¶ 43; Resp. Ex. 1). Plaintiff insisted that, as Hallmark Collection's insurer, "Mid-Continent [wa]s obligated to pay this final judgment," under the terms of the insurance policies. (Resp. Ex. 1 at 2). In the concluding paragraph of that letter, KFA demanded payment of $6,000,000 within thirty days. (*Id.*). Defendant reportedly denied Plaintiff's request on March 12, 2014. (Compl. 13 ¶ 43).

On September 19, 2014, KFA filed this breach of contract action against Mid-Continent, claiming to be a "judgment creditor of Hallmark Collection and [a] third[-]party beneficiary under the Mid-Continent [P]olicies."[9] (Compl. 13-14 ¶¶ 45-51). According to Plaintiff, "KFA's

---

7. In its motion, Defendant insists that it responded to the June 17 Letter in a different letter, dated July 23, 2010. (Mot. 3 ¶ 4, Ex. 3). In a previous lawsuit, however, Mid-Continent identified the July 7 Letter as its second reservation of rights letter. (*See* Resp. Ex. 4). The court resolves this factual dispute in favor of KFA. *See Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005).

8. However, in the second reservation of rights letter, Mid-Continent stated that its defense obligations would apply to the "named insureds," as opposed to the "named defendants." (*See* Mot. Ex. 3 at 5; Resp. Ex. 4 at 5).

9. In its complaint, KFA refers to itself as both a "judgment creditor" and a "third- party beneficiary." (Compl. 14 ¶ 50). Under Texas law, "an entity becomes a third-party beneficiary to an insurance contract when it obtains a judgment against the insured; at that time, the entity becomes a third-party judgment creditor." *Debes v. Gen. Star Indem. Co.*, No. 09-12-00527-CV, 2014 WL 3384679, at *9 (Tex. App.—Beaumont 2014, no writ) (quoting *P.G.*

Proof of Claim, which is now a final judgment, established that Hallmark Collection infringed KFA's copyrights during the term of each of the foregoing insurance policy contracts." (Compl. 12 ¶ 42). Plaintiff contends that "Mid-Continent has denied its obligations and has failed and refused to provide KFA with indemnification under the Mid-Continent policies." (*Id.* at 13 ¶ 44). KFA argues further that "[a]s a judgment creditor of Hallmark Collection, KFA has all of the rights against Mid-Continent that Hallmark Collection has under the Mid-Continent policies." (*Id.* at 12 ¶ 41).

Defendant now moves to dismiss the Complaint, under Rules 12(b)(1) and 12(b)(6), arguing that Plaintiff lacks standing to bring this action, and, alternatively, that KFA has failed to state a claim on which relief can be granted. (Mot. 1-2 ¶ 1).

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of an action if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014) (quoting *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011)). In reviewing a Rule 12(b)(1) motion, the court may rely on any of the following to decide the matter: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or

---

*Bell Co. v. U.S. Fid. & Guar. Co.*, 853 S.W.2d 187, 189 (Tex. App.—Corpus Christi 1993, no writ)); *see Standard Fire Ins. Co. v. Sassin*, 894 F. Supp. 1023, 1027 (N.D. Tex. 1995) (noting that a judgment creditor of an insured is considered to be a third-party beneficiary of the insured's policy). For the sake of clarity, all references will be made to KFA as an alleged "judgment creditor."

8

(3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565-66 (5th Cir. 2010).

"Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: 'facial' attacks and 'factual' attacks." *A.W. v. Humble Ind. Sch. Dist.*, 25 F. Supp. 3d 973, 981 (S.D. Tex. 2014) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). If, as in the present case, a defendant raises a "factual attack" on the court's subject matter jurisdiction, the court may consider any evidence submitted by the parties that is relevant to the issue of jurisdiction. *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 578 (S.D. Tex. 2014) (citing *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989)); *see Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony, or other admissible evidence. *Id.* The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id.* "The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c)." *Turner Indus. Group, LLC v. Int'l Union of Operating Eng'rs*, 8 F. Supp. 3d 875, 884 (S.D. Tex. 2014). In resolving a factual attack, the "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Gilkerson*, 1 F. Supp. 3d at 578 (quoting *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981)). Further, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *In re The Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 601 n. 7 (5th Cir. 2014) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In this case, Defendant has made a "factual attack" to the court's subject matter jurisdiction, by submitting evidentiary materials with its Rule 12(b)(1) motion.

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 948 (5th Cir. 2011) (quoting *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)). In ruling on such a motion, the court cannot look beyond the pleadings. *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994)). "To survive dismissal, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Morris v. Livingston*, 739 F.3d 740, 745 (5th Cir. 2014) (quoting *Randall D. Wolcott,*

*M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011)). Further, if a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "the court should dismiss only on the jurisdictional ground under Rule 12(b)(1), without reaching the question of failure to state a claim under Rule 12(b)(6)." *Crenshaw-Logal v. City of Abilene*, 436 F. App'x 306, 308 (5th Cir. 2011) (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). This approach "prevents [a] court[] without jurisdiction 'from prematurely dismissing a case with prejudice.'" *Id.* (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

In this case, Mid-Continent has filed motions to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), so the Rule 12(b)(1) challenge to jurisdiction should be addressed first. *See Morris*, 739 F.3d at 745.

### III. Analysis

"[T]he issue of standing is one of subject matter jurisdiction." *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006). Standing addresses "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A plaintiff must have standing under both Article III of the Constitution, and the applicable state law, to maintain a cause of action in the federal courts. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005); see *PEMEX Exploration y Produccion v. Murphy Energy Corp.*, 923 F. Supp. 2d 961, 965 (S.D. Tex. 2013) (citing *Crocker v. Fed. Deposit Ins. Corp.*, 826 F.2d 347, 349 (5th Cir. 1987)) ("In deciding questions of law, including standing, involving claims based on state law, applicable state law governs.").

The parties agree that Texas law applies in this lawsuit. (Mot. 10; Resp. 6). "In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the

parties that will be resolved by the court." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012). "The standing inquiry focuses on whether a party has a sufficient relationship with the claim so as to have a 'justiciable interest' in its outcome." *Townsend v. Montgomery Cent. Appraisal Dist.*, No. 14-14-00103-CV, 2015 WL 971313, at *3 (Tex. App.—Houston [14th Dist.] Mar. 3, 2015, no pet. h.) (citing *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005)). "Standing deals with whether a litigant is the proper [party] to bring a lawsuit, not whether that party can ultimately prevail on the claims asserted." *JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II*, --- S.W.3d ----, 2014 WL 7473779, at *5 (Tex. App.—Fort Worth 2014, no pet. h.) (citing *Faulkner v. Bost*, 137 S.W.3d 254, 259 (Tex. App.—Tyler 2004, no pet.)). "Because the Texas test for standing parallels the federal test for Article III standing, Texas courts 'turn for guidance to precedent from the U.S. Supreme Court, which has elaborated on standing's three elements.'" *PEMEX*, 923 F. Supp. 2d at 965 (quoting *Heckman*, 369 S.W.3d at 154).

In Texas, to establish standing to assert a claim for breach of an insurance policy, a plaintiff must show either third-party beneficiary status or privity. *Gonzalez v. VATR Constr., LLC*, 418 S.W.3d 777, 789 (Tex. App.—Dallas 2013, no pet.); *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 387 (Tex. App.—Dallas 2012, no pet.). An entity becomes "a third-party beneficiary to an insurance [policy] when it obtains a judgment against the insured; at that time, the entity becomes a third-party judgment creditor." *Debes v. Gen. Star Indem. Co.*, No. 09-12-00527-CV, 2014 WL 3384679, at *9 (Tex. App.—Beaumont 2014, no writ) (quoting *P.G. Bell Co. v. U.S. Fid. & Guar. Co.*, 853 S.W.2d 187, 189 (Tex. App.—Corpus Christi 1993, no writ)). Under Texas law, a third party "cannot enforce [a] policy directly against [an] insurer until it has been established, by judgment or agreement, that the insured has a legal obligation to

pay damages to the [third party]." *In re Essex Ins. Co.*, 450 S.W.3d 524, 525 (5th Cir. 2014) (quoting *State Farm Cnty. Mut. Ins. Co. of Tex. V. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989)). Further, to recover under an insurance policy as a third-party judgment creditor, a plaintiff must show that the insured complied with all required conditions and terms of the policy. *State Farm Lloyd's Ins. Co. v. Maldonado*, 963 S.W.2d 38, 40 (Tex. 1998); *see SingleEntry.com, Inc. v. St. Paul Fire & Marine Ins. Co.*, 117 F. App'x 933, 935 (5th Cir. 2004) ("A third-party beneficiary judgment creditor of the insured steps into the shoes of the insured."); *see also P.G. Bell*, 853 S.W.2d at 189 (explaining that third-party judgment creditors "are bound by the rights, duties, and obligations of the insured under the terms and conditions of the contract between the insurance company and the insured.").

In its motion to dismiss, Defendant argues that KFA lacks standing to sue under the Mid-Continent Policies, because its insured, Hallmark Collection, "failed to comply with conditions for coverage, including the requirement to give notice and the duty to cooperate, and violated the no-action rule." (Mot. 14 ¶ 27). According to Mid-Continent, "Texas law construes compliance with conditions precedent to insurance coverage as a matter of standing, and KFA has no standing . . . because [Hallmark Collection] did not comply with policy conditions." (*Id.* at 1). Mid-Continent contends further that, under the express language of its policies, "no one has a right to sue for coverage unless all of [the policy] terms have been fully complied with." (*Id.* at 10 ¶ 21). Defendant insists that Hallmark Collection failed to provide it with any notice of the KFA Lawsuit or request a defense in that proceeding, and, therefore, it never triggered the insurer's duty to defend it in that action. (*Id.* at 12 ¶¶ 24-25).

In response, Plaintiff argues that Defendant's motion should be denied, because the standing issue is intertwined with the merits of the underlying case, to the extent that the

13

resolution of the jurisdictional question depends on the resolution of ultimate factual issues. (Resp. 5). KFA relies on *Montez v. Department of Navy*, 392 F.3d 147 (5th Cir. 2004), for the proposition that, in such circumstances, the court must "assume jurisdiction and proceed to the merits" of the case. (*Id.* at 4). In other words, Plaintiff posits that Defendant's challenge to the court's jurisdiction must be made "as a direct attack on the merits of the case under either Rule 12(b)(6) or Rule 56." (*Id.*). According to Plaintiff, resolving the issue of standing, under Rule 12(b)(1), "would require KFA to prove the merits of its suit for coverage." (*Id.* at 5). KFA insists that "[n]o plaintiff is required to prove the merits of its case in order to establish standing." (Reply to Objections 2).

The court is satisfied that the United States Supreme Court has explicitly rejected the notion that a court can "assume" jurisdiction in a case for the purpose of deciding the merits, because such an approach "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case."); *see Fisher v. Univ. of Tex.*, 758 F.3d 633, 662 (5th Cir. 2014) ("Federal courts have an affirmative duty to verify jurisdiction before proceeding to the merits."); *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 531 n. 1 (5th Cir. 2006) ("[T]he district court should not have decided to bypass the jurisdictional question . . . and proceed directly to the merits."); *Cox v. City of Dallas*, 256 F.3d 281, 303 (5th Cir. 2001) ("Standing is a jurisdictional doctrine that the Supreme Court has held must be decided before the merits of the case."). However, there is an important distinction between "assuming" jurisdiction, which is impermissible, and merely postponing the

jurisdictional question, along with the consideration of the merits, for a later stage in the proceedings, which is, at least under certain circumstances, permissible.

Here, Defendant's argument regarding KFA's lack of standing under the Mid-Continent Policies does directly implicate the merits of the underlying case. Indeed, the question of whether Hallmark Collection complied with the policy conditions does go, not only to the issue of subject-matter jurisdiction, but also to the heart of Plaintiff's breach of contract claim. In other words, in federal causes of action at least, the jurisdictional question is so "intermeshed with the merits of [the] case [that] 'it is impossible to decide one without the other.'" *Sierra Club v. Shell Oil Co.*, 817 F.2d 1169, 1172 (5th Cir. 1987) (quoting *McBeath v. Inter-Am. Citizens for Decency Comm.*, 374 F.2d 359, 363 (5th Cir. 1967)). In an abundance of caution then, the proper course of action may be "to reserve for a later proceeding both the jurisdictional question, and the merits of the case." *Wiltz v. Am. Security Ins. Co.*, No. 10-635, 2010 WL 4668355, at *5 (E.D. La. Nov. 9, 2010); *Edinburgh v. Am. Security Ins. Co.*, No. 10-613, 2010 WL 3923292, at *6 (E.D. La. Sept. 28, 2010); *see Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004) (where there is an intertwined attack on jurisdiction and merits, "resolution of the jurisdictional issue on a 12(b)(1) motion is improper"); 5C C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 1350 (3d ed. 2010) ("If . . . a decision of the jurisdictional issue requires a ruling on the underlying substantive merits of the case, the decision should await a determination of the merits either by the district court on a summary judgment motion or by the fact finder at the trial.").

Among the justifications for postponing the jurisdictional question in this case, is the fact that the parties have not yet engaged in discovery, if necessary. "[T]o the extent that the jurisdictional question and the merits are intertwined, a plaintiff who has yet to undertake

discovery almost certainly has not had the chance to fully ascertain the jurisdictional facts." *Jindal v. U.S. Dep't of Educ.*, 2015 WL 854132, at *3 n. 35 (M.D. La. Feb. 26, 2015) (quoting *Wiltz*, 2010 WL 4668355, at *6); *see Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) ("Insofar as the defendant's motion to dismiss raises factual issues, the plaintiff should have an opportunity to develop and argue the facts in a manner that is adequate in the context of the disputed issues and evidence."); *accord Chatham Condominium Ass'ns v. Century Village, Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979); *see also Hutcherson v. JPMorgan Chase Bank, N.A.*, 2012 WL 37393, at *1-2 (S.D. Miss. Jan. 6, 2012) (denying motion to dismiss for mootness under Rule 12(b)(1), because of insufficient briefing by both parties).

More importantly, by postponing the jurisdictional question for a later stage in the proceedings, Plaintiff is afforded greater procedural protections. The Fifth Circuit has explained that "[w]hen the jurisdictional issues are intertwined with the merits, the adjudication of the jurisdictional issue in accordance with the procedure under a 12(b)(1) motion fails to offer the procedural safeguards attendant upon proceedings under a 12(b)(6) motion or a motion for summary judgment under Rule 56." *Chatham Condominium*, 597 F.2d at 1011.

Finally, the inquiry into whether Plaintiff has standing in this case "is not a one-time event." *Jindal*, 2015 WL 854132, at *3 n. 35 (quoting *Wiltz*, 2010 WL 4668355, at *6); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Indeed, an objection to the court's subject-matter jurisdiction, based on a lack of standing, can be asserted "at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). "Since they are not mere pleading requirements, but rather an indispensable part of the plaintiff's case, each element of standing must be supported in the same way as any other matter on which the

plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation." *In re Deepwater Horizon*, 739 F.3d 790, 799-800 (5th Cir. 2014) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 (1996)); *see Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*, 17 F. Supp. 3d 599, 610 n. 8 (explaining that "standing will not always be conclusively resolved at the pleading stage and must be evaluated at "the successive stages of the litigation"). In this case, if discovery subsequently reveals that Plaintiff lacks standing to bring this suit, the question of subject-matter jurisdiction can be revisited.

Because the jurisdictional question and the merits of Plaintiff's claim are "intertwined," that question can be addressed, if necessary, at a later procedural stage. For that reason, Defendant's motion to dismiss under Rule 12(b)(1) should be denied. And, because the jurisdictional question is postponed, Defendant's motion to dismiss under Rule 12(b)(6) should, likewise, also be denied. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has [subject-matter] jurisdiction.").

Defendant's challenge to KFA's claim against it is to be considered under Rule 56 of the Federal Rules of Civil Procedure. **The parties will have thirty (30) days in which to supplement the record with additional evidence, if necessary.**

## IV. Conclusion

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss be **DENIED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *See*

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 13th day of March, 2015.

MARY MILLOY
**UNITED STATES MAGISTRATE JUDGE**