Case 4:14-cv-02702   Document 109   Filed in TXSD on 02/29/16   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
February 29, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIPP FLORES ARCHITECTS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:14-cv-02702 |
| | § | |
| MID-CONTINENT CASUALTY COMPANY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter was referred by United States District Judge Lee H. Rosenthal,[1] for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry No. 9; Docket Entry No. 85). In this breach of contract action, Plaintiff Kipp Flores Architects, LLC ["KFA"] seeks to recover, as a judgment creditor, from Defendant Mid-Continent Casualty Company ["Mid-Continent"]. (Plaintiff's Complaint ["Complaint"], Docket Entry No. 1). Before the court are the parties' cross-motions for summary judgment. (Plaintiff's Motion for Partial Summary Judgment ["Plaintiff's Motion"], Docket Entry No. 82; Mid-Continent's Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment ["Defendant's Motion"], Docket Entry No. 91). Responses and replies have been filed as well. (Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment ["Plaintiff's Response"], Docket Entry No. 97; Defendant's Reply in Support of Defendant's Cross-Motion for Summary Judgment ["Defendant's Reply"], Docket Entry No. 100). After considering the

---

[1]. This case was originally referred by United States District Judge Vanessa D. Gilmore. (Docket Entry No. 9). On November 16, 2015, Judge Gilmore recused herself, and the case was then transferred to Judge Rosenthal. (Docket Entry No. 84; Docket Entry No. 85).

pleadings, the evidence submitted, and the applicable law, it is RECOMMENDED that Defendant's motion be GRANTED, and that Plaintiff's motion be DENIED.

**I. Background**

Plaintiff KFA is an architectural firm that creates and markets home designs. (Compl. ¶ 5; Mid-Continent Casualty Company's Second Amended Answer Subject to Motion to Dismiss Under FRCP 12(b) and Motion for Summary Judgment for Lack of Subject Matter Jurisdiction ["Answer"], Docket Entry No. 75, at ¶ 5). Beginning in 2003, KFA entered into a series of licensing agreements with a Texas homebuilder, Hallmark Collection of Homes, LLC ["Hallmark Collection"].[2] (Compl. ¶¶ 18, 20; Answer ¶¶ 18, 20). Under those agreements, KFA created and delivered architectural designs for Hallmark Collection's use in the construction of its model homes. (*Id.*). Each design included a license, which allowed Hallmark Collection to build only one house from that architectural plan. (Compl. ¶ 20). For that reason, the agreements required Hallmark Collection to compensate KFA each time it constructed any additional house that was based on a KFA design. (Compl. ¶ 21; Answer ¶ 21). KFA alleges, however, that Hallmark Collection continued to use its designs to build and sell hundreds of houses, without paying for the right to do so. (Compl. ¶ 20).

In March 2009, KFA filed a copyright infringement lawsuit [the "KFA Lawsuit" or the "Underlying Action"], in the Southern District of Texas, against Hallmark Collection, its limited partnership, Hallmark Design Homes, L.P. ["Hallmark Design"], and an individual owner of

---

2. Hallmark Collection was formerly known as Hallmark Design of Homes, LLC. (Compl. ¶ 6; Answer ¶ 6). Under its Articles of Amendment filed with the Texas Secretary of State on July 28, 2004, the corporation changed its name to Hallmark Collection of Homes, LLC. (*Id.*). For the sake of clarity, references will be to the corporation as "Hallmark Collection."

Hallmark Collection, Joe Partain.³ (Original Complaint, *Kipp Flores Architects, LLC v. Hallmark Design Homes, L.P.*, No. 4:09-cv-00850 (S.D. Tex. Mar. 24, 2009)). After that lawsuit began, Hallmark Collection and Hallmark Design both filed for Chapter 7 bankruptcy protection, on November 16, 2009. (Chapter 7 Voluntary Petition, *In re Hallmark Collection of Homes, LLC*, No. 4:09-bk-38715 (Bankr. S.D. Tex. Nov. 16, 2009); Chapter 7 Voluntary Petition, *In re Hallmark Design Homes, LP*, No. 4:09-bk-38714 (Bankr. S.D. Tex. Nov. 16, 2009)). In its bankruptcy filings, Hallmark Collection disclosed liabilities in excess of $2.5 million, but listed no assets that were available for distribution to creditors. (Def.'s Mot. Ex. 6 at 1; Def.'s Mot. Ex. 9 at 1-5, 29). On Schedule F of its petition, Hallmark Collection identified KFA as a creditor, stating that it held an unsecured, nonpriority claim, for an "unknown" amount, which arose out of the Underlying Action. (Def.'s Mot. Ex. 9 at 20).

On November 23, 2009, the district court entered an order to stay, and to administratively close the Underlying Action against Hallmark Collection and Hallmark Design, pending resolution of those bankruptcy proceedings. (Order Staying and Partially Administratively Closing Case, *Kipp Flores*, No. 4:09-00850, Docket Entry No. 26). The stay was lifted, however, and the KFA Lawsuit did continue against the remaining individual defendant, Joe Partain. (Compl. ¶ 26; Answer ¶ 26).

On January 7, 2010, the Chapter 7 Trustee in the Hallmark Collection bankruptcy filed a "Notice of Assets, Notice to Creditors and Other Parties in Interest of the Need to File Claims." (Notice of Assets, Notice to Creditors and Other Parties in Interest of the Need to File Claims,

---

3. KFA's complaint alleged, among other things, that the defendants "created, published[,] and used non-pictorial depictions of structures based on KFA's Copyrighted Works in promotional and advertising material . . . [and] published and used these infringing materials in the course of advertising their infringing structures." (Def.'s Mot. Ex. 2 at 6 ¶ 15).

3

*Hallmark Collection*, 4:09-bk-38715, Docket Entry No. 8). That notice provided, in relevant part, that:

> It having appeared from the schedules of [Hallmark Collection] at the time of filing that there was no estate from which any dividend could be paid to creditors, the notice to creditors advised that it was unnecessary for any creditor to file his claim at that time.
>
> It appearing subsequently that there is an estate from which a dividend to creditors may be paid, creditors must now file claims in this case in order to share in any distribution from the estate. CLAIMS MUST BE FILED ON OR BEFORE NINETY (90) DAYS FROM THE ISSUANCE OF THIS NOTICE.
>
> Claims which are not filed timely as set forth above will not be allowed, except as otherwise provided by law.

(*Id.*).

Three months later, on April 6, 2010, KFA filed a proof of claim, in the amount of $63,471,000.00, against Hallmark Collection. (Def.'s Mot. Ex. 12). That proof of claim was based on a purported "copyright infringement."[4] (*Id.* at 1). In support of its claim, KFA attached a copy of the complaint from the Underlying Action, as well as a three-page document entitled "Explanation and Synopsis of Kipp Flores Architect's Proof of Claim." (*Id.* at 2-4). In that "Explanation," Plaintiff calculated the claim amount "[b]ased on the deposition testimony of Mr. Partain in the [KFA] Lawsuit." (*Id.* at 2). In making the calculation, KFA estimated "the number of infringing houses," "their typical sale price," and "the amount of gross revenue from such sales." (*Id.*). Plaintiff stated that it was "continuing to seek evidence from third parties to verify these figures," and that it would subsequently "amend its proof of claim to reflect its findings." (*Id.* at 3). The last paragraph of the document stated the following:

> KFA recognizes that [Hallmark Collection] may be able to reduce its liability by proving its expenses for the houses at issue with admissible evidence. However,

---

4. On November 23, 2010, KFA filed an identical proof of claim in the Hallmark Design bankruptcy action. (Def.'s Mot. Ex. 13).

4

>in the absence of such proof, the estimation of Hallmark's gross receipts from the sales of infringing houses stands as the measure of [its] liability to KFA[.]

(*Id.* at 4).

KFA never amended its proof of claim against Hallmark Collection.  (*See* Def.'s Mot. Ex. 11).  No objections were filed to KFA's proof of claim, and no order allowing or disallowing the claim was ever entered.  (*Id.*).  On August 17, 2010, the Chapter 7 Trustee submitted a No Asset Report, stating that there were no proceeds from the Hallmark Collection estate for distribution to creditors.  (Chapter 7 Trustee's Report of No Distribution, *Hallmark Collection*, 4:09-bk-38715).  The No Asset Report stated, in full, that:

>Chapter 7 Trustee's Report of No Distribution: I, Lowell T Cage, having been appointed trustee of the estate of [Hallmark Collection], report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor[] and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law.  Pursuant to Fed R Bank P 5009, I hereby certify that the estate of [Hallmark Collection] has been fully administered.  I request that I be discharged from any further duties as trustee.  Key information about this case as reported in schedules filed by the debtor[] or otherwise found in the case record: This case was pending for 9 months.  Assets Abandoned: $ 0.00, Assets Exempt: $ 0.00, Claims Scheduled: $ 267818.68, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment: $ 267818.68.

(*Id.*).  Five weeks later, on September 21, 2010, the Hallmark Collection bankruptcy case was closed.  (Final Decree, *Hallmark Collection*, 4:09-bk-38715, Docket Entry No. 14).

In the interim, on April 29, 2010, KFA filed an amended complaint in the Underlying Action, naming two additional defendants, Laura Partain and William Graper.  (First Amended Complaint, *Kipp Flores*, No. 4:09-cv-00850, Docket Entry No. 41).  Approximately nine months later, on February 4, 2011, Joe Partain and Laura Partain filed a joint Chapter 7 bankruptcy petition.  (Chapter 7 Voluntary Petition, *In re Partain*, No. 11-bk-31204 (Bankr. S.D. Tex. Feb. 4, 2011), Docket Entry No. 1).  Shortly thereafter, on March 28, 2011, KFA filed a motion to

withdraw reference to the bankruptcy court of those claims that had been made against Hallmark Design, Joe Partain, and Laura Partain in the Underlying Action. (Def.'s Mot. Ex. 18, Ex. 19). No such request was ever made in regard to the claim made against Hallmark Collection, however, as that bankruptcy case had been closed almost one year earlier. (*See* Final Decree, *Hallmark Collection*, 4:09-bk-38715, Docket Entry No. 14). The district court granted KFA's motion to withdraw reference, on August 25, 2011. (Order, *Kipp Flores*, No. 4:09-cv-00850, Docket Entry No. 92).

On November 29, 2011, KFA filed an amended proof of claim in the Hallmark Design bankruptcy action, in the amount of $83,610,829.00. (Def.'s Mot. Ex. 14). KFA filed an identical proof of claim in the Partain bankruptcy action. (Def.'s Mot. Ex. 25). Those claims were purportedly based on "Hallmark's records of the gross sales prices of houses that were illegally constructed from various KFA plans." (Def.'s Mot. Ex. 14 at 2; Def.'s Mot. Ex. 25 at 2).

The district court set a July 20, 2012 deadline for filing objections to the proofs of claim. Def.'s Mot. Ex. 27). Thereafter, the Chapter 7 Trustees in the Hallmark Design and Partain bankruptcies each filed timely objections to KFA's claims. (Def.'s Mot. Ex. 28, Ex. 29). Those objections were consolidated for trial with the Underlying Action. (Def.'s Mot. Ex. 30). In September 2012, following a jury verdict in favor of KFA in the Underlying Action for copyright infringement, a judgment was entered against Hallmark Design, in the amount of $3,231,084.00. (Def.'s Mot. Ex. 32, Ex. 33). No liability was imposed upon the individual defendants. (*Id.*). On October 4, 2012, KFA was granted an "allowed unsecured claim," in the amount of $3,239,688.40, in the Hallmark Design bankruptcy. (Def.'s Mot. Ex. 33). The final judgment

specified that KFA did not have an allowed claim in the Partain bankruptcy, and that it took nothing on its claims against William Graper. (*Id.*).

On January 23, 2013, Mid-Continent, the insurer to the defendants in the KFA Lawsuit, filed a declaratory judgment action in the Western District of Texas, to determine whether coverage was owed to the architectural firm on the judgment against Hallmark Design [the "Coverage Action"]. (Complaint, *Mid-Continent Cas. Co. v. Kipp Flores Architects, LLC*, No. 1:13-cv-00060 (W.D. Tex. Jan. 13, 2013)). KFA counterclaimed for recovery of the judgment amount. (Def.'s Mot. Ex. 36). Ultimately, the district court in the Coverage Action awarded $3,031,563.12 to KFA, on May 23, 2014. (Def.'s Mot. Ex. 37). That judgment was affirmed by the Fifth Circuit, and eventually paid, in full, by Mid-Continent. (Def.'s Mot. Ex. 38).

*The Pending Litigation*

In the interim, on February 10, 2014, KFA had sent a presentment letter to Mid-Continent, reporting that it had previously obtained a $63,471,000.00 "final judgment" against Hallmark Collection in the bankruptcy court. (Compl. ¶ 43; Answer ¶ 43; *see* Docket Entry No. 10 at Ex. 1). Plaintiff insisted that, as Hallmark Collection's insurer, "Mid-Continent [wa]s obligated to pay this final judgment," under the terms of the insurance policies. (Docket Entry No. 10 at Ex. 1). In the concluding paragraph of that letter, KFA demanded payment of $6 million within thirty days. (*Id.*). Defendant refused that demand on March 12, 2014. (Compl. ¶ 43; Answer ¶ 43).

On September 19, 2014, KFA filed this breach of contract action against Mid-Continent, claiming to be a "judgment creditor of Hallmark Collection and [a] third[-]party beneficiary

under the Mid-Continent [P]olicies."[5] (Compl. ¶¶ 45-51). According to Plaintiff, "KFA's Proof of Claim, which is now a final judgment, established that Hallmark Collection infringed KFA's copyrights during the term of each of the foregoing insurance policy contracts." (*Id.* at ¶ 42). Plaintiff contends that "Mid-Continent has denied its obligations and has failed and refused to provide KFA with indemnification under the Mid-Continent policies." (*Id.* at ¶ 44). KFA argues further that "[a]s a judgment creditor of Hallmark Collection, KFA has all of the rights against Mid-Continent that Hallmark Collection has under the Mid-Continent policies." (*Id.* at ¶ 41).

Both parties now move for summary judgment on whether the $63,471,000.00 proof of claim, filed by KFA in the Hallmark Collection bankruptcy proceeding, constitutes a final judgment.[6] Having considered the pleadings, the evidence submitted, and the applicable law, the court concludes that Defendant's motion should be granted, and that Plaintiff's motion should be denied.

## II. Standard of Review

Summary judgment is appropriate if the record discloses "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (a). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict

---

5. In its Complaint, KFA refers to itself as both a "judgment creditor" and a "third-party beneficiary." (Compl. ¶ 50). Under Texas law, "an entity becomes a third-party beneficiary to an insurance contract when it obtains a judgment against the insured; at that time, the entity becomes a third-party judgment creditor." *Debes v. Gen. Star Indem. Co.*, No. 09-12-00527-CV, 2014 WL 3384679, at *9 (Tex. App.—Beaumont 2014, no writ) (quoting *P.G. Bell Co. v. U.S. Fid. & Guar. Co.*, 853 S.W.2d 187, 189 (Tex. App.—Corpus Christi 1993, no writ)); *see Standard Fire Ins. Co. v. Sassin*, 894 F. Supp. 1023, 1027 (N.D. Tex. 1995) (noting that a judgment creditor of an insured is considered to be a third-party beneficiary of the insured's policy). For the sake of clarity, all references will be made to KFA as an alleged "judgment creditor."

6. Approximately six months before filing this motion for summary judgment, Defendant filed a separate motion on coverage issues alone. (Docket Entry No. 47). At a December 9, 2015 status conference, the parties agreed to have the court first resolve the cross-motions on the bankruptcy issue. (*See* Docket Entry No. 94).

for the nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (internal citations omitted). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party, however, need not negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (internal quotation marks omitted). If the moving party meets its initial burden, however, "the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). "[T]he nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Id.* (quoting *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002)). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). On cross-motions for summary judgment, the court "review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Green v. Life Ins. Co. of N. Am.*, 745 F.3d 324, 329 (5th Cir. 2014) (quoting *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013)).

**III. Analysis**

In its motion for summary judgment, KFA argues that its $63,471,000.00 proof of claim, which was filed in the Hallmark Collection bankruptcy, constitutes a "final judgment" that is enforceable against Mid-Continent, because "the[re] is no question or dispute that [the proof of claim was] timely filed[,] . . . that no party filed any objection to it, and that the [bankruptcy] case was then closed."  (Pl.'s Mot. 4).  KFA contends, specifically, that under § 502(a) of the Bankruptcy Code, a proof of claim to which no objection has been made is automatically "deemed allowed" when a bankruptcy case is closed.  (*Id.* at 3).  Plaintiff also argues that, once a proof of claim is "deemed allowed," it becomes a "final judgment" on the merits for all purposes.  (*Id.* at 4).

Mid-Continent, in its own motion for summary judgment, and in response to Plaintiff's motion, insists that KFA's proof of claim was not "deemed allowed," and so, is not a final judgment, for two reasons.  (Def.'s Mot. 19-25).  First, Mid-Continent argues that the bankruptcy court did not have subject matter jurisdiction to allow the claim, because the Hallmark Collection bankruptcy case was administered as a "no asset" case.  (*Id.* at 19-22).  Defendant urges the court to find that, in a "no asset" case, the bankruptcy court's "core jurisdiction to determine the allowance or disallowance of claims against the estate" is "never [] triggered," because there is nothing of value available to distribute to the creditors.  (*Id.* at 22).  According to Mid-Continent, to allow KFA's proof of claim in the Hallmark Collection bankruptcy "would [have] amount[ed] to nothing more than an advisory opinion[.]"  (Def.'s Reply 9).  Mid-Continent argues further that, even if KFA's proof of claim was "deemed allowed," it is not a final judgment on the merits for res judicata purposes, because the bankruptcy court "never entered any [] order or judgment allowing the [claim]."  (Def.'s Mot. 25).  Defendant contends that the Fifth Circuit "gives res

judicata effect only to actual orders of the [b]ankruptcy [c]ourt," as opposed to "deemed allowed claims that are untethered to any actual court order pertaining to the allowance or recovery on [a] proof of claim." (*Id.* at 26).

Mid-Continent next argues that KFA's proof of claim was not "deemed allowed," or even "allowable," because the claim "was never estimated by the [bankruptcy court] or liquidated in the [Underlying] Action prior to the closing of the Hallmark Collection bankruptcy case." (*Id.* at 22-25). In making that argument, Defendant relies on § 502(c) of the Bankruptcy Code for the contention that "unliquidated claims must be estimated by the [court], if they are to be allowed under [§ 502(a)] short of full adjudication on the merits." (*Id.* at 22). It insists that KFA's proof of claim was subject to a mandatory estimation under § 502(c), as an unliquidated claim, because the claim was "predicated on the [Underlying] Action in which Hallmark Collection's liability and damage exposure were uncertain and had yet to be adjudicated." (*Id.* at 24). The insurer argues that Plaintiff "fail[ed] to satisfy the specific requirements of [§ 502(c)]," because the "uncontroverted record in [the] Hallmark Collection [case]" shows that "the [bankruptcy court] was never called upon to estimate the KFA Proof of Claim." (*Id.* at 25).

*Applicability of § 502(a)*

Mid-Continent argues that KFA's proof of claim was not "allowed" in the Hallmark Collection bankruptcy, because the "deemed allowance" feature of § 502(a) does not apply to proofs of claim filed in a "no asset" case. (Def.'s Mot. 19-22). On the other hand, KFA is adamant that the plain language of § 502(a) is "unambiguous" and "unconditional" that "a filed proof of claim is 'deemed allowed' unless a party in interest objects." (Pl.'s Resp. 6, 11). Plaintiff emphasizes that § 502(a) "does not say 'except in no asset cases' or 'only in cases

where there will be distribution to creditors.'" (Pl.'s Resp. 11). Plaintiff insists that, for that reason, § 502(a) "must be applied as written." (*Id.*).

Unquestionably, § 502 of the Bankruptcy Code governs the claims allowance process. Section 502(a) provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest[] . . . objects." 11 U.S.C. § 502(a). A proof of claim filed in accordance with § 502(a) constitutes *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). If a party in interest files an objection to a proof of claim, the bankruptcy court must determine whether and to what extent the claim is allowed pursuant to § 502(b). Section 502(b) then provides, in relevant part: "if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim in such amount, except [as otherwise provided in § 502(b)(1)-(9)]." 11 U.S.C. § 502(b).

The Hallmark Collection bankruptcy was administered under Chapter 7 of the Bankruptcy Code. (*See* Voluntary Chapter 7 Petition, *Hallmark Collection*, 4:09-bk-38715). In contrast to a Chapter 11 bankruptcy, which "provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures for creditors," the aim of a Chapter 7 bankruptcy is to ensure "prompt closure and distribution of the debtor's estate," and to "efficiently [administer] the liquidation of the estate for the benefit of creditors." *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993); *In re Reed*, 405 F.3d 338, 341 (5th Cir. 2005); *see In re MortgageAmerica Corp.*, 714 F.2d 1266, 1273 (5th Cir. 1983); *see also* 11 U.S.C. § 726. For that reason, the claims allowance process in a Chapter 7 case gives creditors the ability "to participate in the distribution of assets." *In re Deutsch-Sokol*, 290 B.R. 27, 31 (S.D.N.Y. 2003) (citing *In re Mendiola*, 99 B.R. 864, 867 (Bankr. N.D.

Ill. 1989)); *see Matter of Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 2010) ("[T]he assertion of a claim in bankruptcy is, of course, not an attempt to recover a judgment against the debtor but to obtain a distributive share in the immediate assets of the proceeding.").

In a "no asset" Chapter 7 case, however, the filing of proofs of claim "serves no practical purpose since there will be no distribution from the estate in which to participate." *In re Kronemyer*, 405 B.R. 915, 921 (9th Cir. BAP 2009) (quoting 4 Collier on Bankruptcy ¶ 501.01[3][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2015)); *In re Nielsen*, 383 F.3d 922, 926 (9th Cir. 2004) (stating that the filing of a proof of claim is "meaningless and worthless" in a "no asset" case); *In re Gold*, 375 B.R. 316, 325 (Bankr. N.D. Tex. 2007) (stating that unsecured creditors' ability to file proofs of claim in no asset Chapter 7 cases is "irrelevant"). In fact, in "no asset" cases, creditors are not even required to file proofs of claim. *Matter of Smith*, 21 F.3d 660, 663 (5th Cir. 1994); Fed. R. Bankr. P. 2002(e); *see also In re Eastman*, 512 B.R. 832, 843 (Bankr. W.D. Tex. 2009) ("In a no asset case, there is no issue of 'timely filing a proof of claim' because the deadline to do so never runs."). It stands to reason then, that bankruptcy courts do not set deadlines for filing objections in "no asset" cases. *See Shapiro v. United States (In re Shapiro)*, 188 B.R. 140, 148 (Bankr. E.D. Pa. 1995) ("[A] bankruptcy court will normally not involve itself in fixing the amounts of claims in no-asset cases. Bankruptcy procedure is structured so that there will not be a claims resolution process in no-asset Chapter 7 cases."); *In re Bailey*, No. 10-62834, 2010 WL 4702354, at *3 (Bankr. N.D. Ga. Nov. 17, 2010).

It has been clearly established that bankruptcy courts are courts of limited jurisdiction. *See Stern v. Marshall*, 564 U.S. 2 (2011). By statute, the bankruptcy court's core jurisdiction extends only to the "allowance or disallowance of claims **against the estate**[.]" 28 U.S.C. §

13

157(b)(2)(B). (emphasis added). In a "no asset" Chapter 7 case, therefore, the fact that there will be no distribution from the estate has an impact on the bankruptcy court's jurisdiction over creditors' hoped for claims. *See In re Mesa Business Park Partnership*, 127 B.R. 144, 148 (Bankr. W.D. Tex. 1991) ("There is no real and substantial controversy in [a no asset Chapter 7 case] to warrant a determination of the allowed amount of the unsecured claims against the estate, depriving the federal court of the 'actual case or controversy' prerequisite to the proper invocation of its jurisdiction."); *In re Rowe*, 342 B.R. 341, 348 (Bankr. D. Kan. 2006) ("[I]n a no-asset Chapter 7 case, a creditor will not usually file a proof of claim, and there is no statutory basis for a claim to be 'deemed' filed. The consequence is that generally in a Chapter 7 case there will not be an 'allowed claim.'").

Here, there is no question that the Hallmark Collection bankruptcy was administered as a "no asset" case. In his August 17, 2010 No Asset Report, the Chapter 7 trustee stated, explicitly, that there was "no property available for distribution from the [Hallmark Collection] estate." (Def.'s Mot. Ex. 15 at 3). The No Asset Report provided that all "scheduled claims" against the estate were to be discharged without payment, and it designated all remaining "asserted claims" as "not applicable." (*Id.*). Five months later, on September 21, 2010, the bankruptcy court issued a Final Decree, declaring the case "fully administered," and ordering that it be closed. (Final Decree, *Hallmark Collection*, 4:09-bk-38715, Docket Entry No. 14). Even though KFA filed its proof of claim within the deadline set by the Chapter 7 trustee, the bankruptcy court never imposed any deadline for filing objections to KFA's claim, and the Final Decree did not reference the claim. *See Moyette*, 231 B.R. at 499. It appears then, that the claims allowance process was never "triggered" at all. *See In re Caliguri*, 431 B.R. 324, 327 (Bankr. E.D.N.Y. 2010) ("Because this is a no asset case, creditors were instructed not to file claims. As such the

claims adjudicative process would not be invoked because claims did not need to be filed, and the allowance or disallowance of claims will not affect creditor distributions."); *In re Geisler*, No. 13-20707-CMB, 2014 WL 6608765, at *2 (Bankr. W.D. Pa. Nov. 19, 2014). As a result, the court concludes that KFA's proof of claim was not "deemed allowed," as a matter of law, as KFA suggests, and Plaintiff's argument on that score fails. *See In re Wade*, No. 13-50376, 2015 WL 7281670, at *3-4 (9th Cir. BAP Nov. 17, 2015) (holding that a bankruptcy court lacked subject matter jurisdiction to rule on a debtor's objection to a proof of claim filed in a no asset Chapter 7 case, because the debtor "had no pecuniary interest to protect with respect to his bankruptcy estate in connection with the Claim Objection"); *In re Holland*, No. 14-20990, 2015 WL 4600382, at *2 (Bankr. S.D. Ga. Jul. 30, 2015) (dismissing objections to proofs of claim filed in a no asset Chapter 7 case, because the resolution of the claims or the objections would not "serve any bankruptcy purpose").

Plaintiff argues, nevertheless, that its proof of claim was automatically "deemed allowed," upon the closing of the Hallmark Collection case, based on the reasoning set out in the Ninth Circuit decision, *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998). (Pl.'s Resp. 12). In *Siegel*, the Ninth Circuit held that a proof of claim, which had been "deemed allowed" under section 502(a), precluded the debtor from suing a lender in a subsequent state court action for breach of contract and tortious interference, which arose from a foreclosure on the debtor's property. *Siegel*, 143 F.3d at 529-30. In sum, *Siegel* stands for the proposition that the "deemed allowance" of a claim under § 502(a) is a final judgment for purposes of res judicata, even though there is no "actual separate order of some kind regarding the claim in question." *Id.* at 530. Importantly, however, *Siegel* did not discuss the applicability of § 502(a) to "no asset" bankruptcies, nor did it address the extent to which a bankruptcy proceeding,

similar to the one at issue, is a "no asset" case.  In fact, in reaching its decision, the Ninth Circuit emphasized that, had Siegel objected to the lender's claims during the bankruptcy proceeding, there was a potential for the estate to "come out solidly solvent." *Id.* at 531.  In the Hallmark Collection bankruptcy, by contrast, even had an objection had been successfully lodged to KFA's proof of claim, the bankruptcy estate still would have remained insolvent. *See In re Khan*, No. 10-36155, 2011 WL 6179941, at *5 n.4 (E.D. Tenn. Dec. 13, 2011).

Further, the *Siegel* holding must be read in the context of its facts.  In *Siegel*, the Ninth Circuit applied the principles of res judicata "defensively," as an equitable remedy, to preclude the debtor from engaging in judicial gamesmanship.  The *Siegel* court particularly underscored that the plaintiff, in electing to pursue his claims against the lender outside of the bankruptcy proceeding, had "hoped to accomplish a discharge of his obligations to [the lender], while keeping his own claims against it." *Siegel*, 143 F.3d at 531.  In this instance, however, as Mid-Continent points out, KFA is attempting to use res judicata "offensively" to obtain a "final judgment" against Hallmark Collection, to collect on the insurance proceeds.  (Def.'s Reply 26).

As a final matter, following the February 25, 2016 hearing on these motions, each party submitted supplemental authority for the court's review.  (Submission of Additional Authority in Support of Opposition and Cross-Motion for Summary Judgment by Mid-Continent Casualty Company ["Defendant's Supplement"], Docket Entry No. 106; Plaintiff's Submission of Supplemental Authority and Response to Defendant's Submission of Supplemental Authority ["Plaintiff's Supplement"], Docket Entry No. 107).  Plaintiff has cited a more recent Ninth Circuit decision, *Rein v. Provident Financial Corp.*, 270 F.3d 895 (9th Cir. 2001), contending that it "reiterate[s] [the] holding in *Siegel* that the phrase 'deemed allowed' in § 502(a) means that claims that are allowed because no objection was filed are treated as final judgments,

16

notwithstanding the lack of a formal order." (Pl.'s Supplement 1). However, as in *Siegel*, the decision in *Rein* does not address the extent to which § 502(a) applies to "no asset" cases. In *Rein*, the Ninth Circuit held that a reaffirmation agreement in a prior Chapter 7 bankruptcy proceeding, which was unaccompanied by a court order, was "not a final judgment on the merits," because "the record d[id] not show that . . . [the] settlement agreement was actually reviewed and approved by the bankruptcy court." *Rein*, 270 F.3d at 899-901. Indeed, the *Rein* court stated, explicitly, that there must be "some indicia of judicial action" for res judicata to attach. *Id.* at 901. *Rein*, therefore, is not helpful to Plaintiff here.

On the record before this court, KFA has not raised a genuine issue of material fact on whether its proof of claim was "deemed allowed" in the Hallmark Collection bankruptcy. As a result, KFA does not have a "final judgment" against Hallmark Collection, as a matter of law. For that reason, Mid-Continent is entitled to summary judgment on that issue.

Without a "final judgment" against Hallmark Collection, KFA has no right to recover against Mid-Continent for its policy benefits. *See State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 40 (Tex. 1998); *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996). And, because there is no "final judgment," there is no need to address the other arguments raised in Defendant's motion for summary judgment.

## IV. Evidentiary Objection

Finally, Plaintiff raises an evidentiary objection to the evidence submitted by Defendant. In further support of its Motion, Mid-Continent attached a declaration from a former bankruptcy judge, Leif Clark. (Def.'s Mot. Ex. 49 ["Clark Declaration"]). KFA moved to exclude the opinions offered by Clark, under Federal Rule of Evidence 702, arguing that they are "irrelevant" and "inadmissible." (Pl.'s Resp. 2 n.2, 5 n.4; Docket Entry No. 96). KFA points out that, in his

declaration, Clark states "pure opinions of law," and that such improper opinions are not based on any reliable methodology. (Docket Entry No. 96 at 3, 6).

Federal Rule of Evidence 702 ["Rule 702"] governs the admissibility of expert testimony. Under Rule 702, an expert witness may provide opinion testimony, only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

Federal Rule of Evidence 704 ["Rule 704"] provides that expert opinions are not inadmissible merely because they "embrace" ultimate issues to be decided by the trier or fact. Fed. R. Evid. 704(a); *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999). "Rule 704, however, does not open the door to all opinions." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Indeed, despite its permissive language, Rule 704 "does not allow an expert to render conclusions of law." *Snap-Drape, Inc. v. Comm'r of Internal Revenue*, 98 F.3d 194, 197-98 (5th Cir. 1996).

In his declaration, Clark elaborates on the function and purpose of section 502 of the Bankruptcy Code. He recites that "a filed proof of claim to which no objection is made does not constitute a final judgment on the merits, where the case in which such claim is filed is closed as a no-asset case," because ""the only purpose for filing a proof of claim in a bankruptcy case is to qualify for distribution[.]" (Clark Decl. ¶ 5). Clark further states that the Bankruptcy Code "imposes no duty on trustees to object to claims in a no asset case," and that the trustee in the Hallmark Collection bankruptcy "exercised the discretion given under the Bankruptcy Code and the Bankruptcy Rules to file a [No Asset Report.]" (*Id.* at ¶¶ 6-7). Clark also reports that "[t]he

proof of claim at issue in this case could not have been an 'allowed claim' . . . because on its face it was not yet liquidated."  (*Id.* at ¶ 12).

It is clear that such opinions intrude on the court's role in weighing the parties' arguments.  *See Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) ("Our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury."); *see also Specht v. Jensen*, 853 F.2d 805, 808-09 (10th Cir. 1988) ("There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge.").  For that reason, his declaration is inadmissible, and his statements have not been considered.  *See Askanase*, 130 F.3d at 673; *Am. Home Assurance Co. v. Cat Tech, LLC*, 717 F. Supp. 2d 672, 681-82 (S.D. Tex. 2010), *rev'd on other grounds*, 660 F.3d 216 (5th Cir. 2011); *Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*, No. H-06-1330, 2008 WL 1999234, at *18 (S.D. Tex. May 8, 2008).  Therefore, Plaintiff's motion to exclude [Docket Entry No. 47] is GRANTED.

## V. Conclusion

Accordingly, it is **RECOMMENDED** that Defendant's motion for summary judgment be **GRANTED**, and the Plaintiff's motion for summary judgment be **DENIED**.  Defendant's previous motion for summary judgment **[Docket Entry No. 47]** is, therefore, **moot**.  Plaintiff's motion to exclude **[Docket Entry No. 96]** is **granted**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 29th day of February, 2016.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**